UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| YTHAYHU KASSA, <br><br> Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL, Deputy Commissioner of Social Security for Operations, <br><br> Defendant. | CASE NO. 2:17-CV-01332-JRC <br><br> ORDER ON PLAINTIFF'S COMPLAINT |

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13. *See also* Consent to Proceed before a United States Magistrate Judge, Dkt. 2. This matter has been fully briefed. *See* Dkt. 14, 17, 18.

After considering and reviewing the record, the Court concludes that the ALJ did not provided specific and legitimate reasons for rejecting plaintiff's testimony. Although he held himself out as available for work while receiving unemployment benefits, substantial evidence did not support the ALJ's conclusion that plaintiff was capable of working. Nor was there substantial evidence to support the ALJ's conclusion that plaintiff was noncompliant with

prescribed treatment. The ALJ also failed to consider whether plaintiff's daily activities — such as driving, preparing simple meals, and watching television — met the threshold for transferable work skills. The ALJ erred in rejecting lay witness testimony because he merely restated the reasons he found plaintiff's own testimony not credible. Finally, the ALJ failed to provide specific and legitimate reasons for rejecting the opinion of plaintiff's treating physician.

Therefore, pursuant to sentence four of 42 U.S.C. § 405(g) and the reasons stated herein, this matter should be remanded. Because the Court is "crediting as true" the treating physician's testimony for the period between plaintiff's onset date and his first hearing, and because there are no further issues to be resolved with respect to that period, the Court is remanding in part for payment of benefits for that period. Outstanding factual issues remain with regard to the balance of plaintiff's claim, therefore, this matter is remanded for a determination of plaintiff's RFC for the period after plaintiff's first hearing.

## BACKGROUND

Plaintiff, YTAYHU KASSA, was born in 1965 and was 46 years old on the amended alleged disability onset date of March 1, 2011. *See* AR. 165-72, 1483, 1518. Plaintiff has his GED and CNA certification. AR. 43, 46. He has work experience as a nursing assistant and an activity assistant in a nursing home. AR. 45-46. Plaintiff stopped working in March 2011 because of his medical impairments. AR. 243.

According to the ALJ, plaintiff has at least the severe impairments of "cardiovascular conditions; asthma; diabetes; bilateral hip disorders (status post bilateral hip replacement); gout; lumbar degenerative disk disease; and obesity (20 CFR 404.1520(c))." AR. 1486.

|   |   |
|---|---|
| 1 | At the time of the hearing, plaintiff was living in a two bedroom apartment with his wife |
| 2 | and three children. AR. 1521. |
| 3 | |
| 4 | PROCEDURAL HISTORY |
| 5 | Plaintiff's application for disability insurance benefits ("DIB") pursuant to 42 U.S.C. § |
| 6 | 423 (Title II) of the Social Security Act was denied initially and following reconsideration. *See* |
| 7 | AR. 75-95. Plaintiff's first hearing resulted in a finding that he was not disabled. AR. 10-29. |
| 8 | Following plaintiff's appeal and a remand from this court for further proceedings (AR. 1582- |
| 9 | 1616), his second hearing was held before Administrative Law Judge Larry Kennedy ("the |
| 10 | ALJ") on August 4, 2016. *See* AR. 1509-552. On July 6, 2017, the ALJ issued a written decision |
| 11 | in which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act. |
| 12 | *See* AR. 1480-508. |
| 13 | In plaintiff's Opening Brief, plaintiff raises the following issues: (1) Whether the ALJ |
| 14 | provided clear and convincing reasons for rejecting the testimony of plaintiff; (2) Whether the |
| 15 | ALJ provided germane reasons for rejecting the lay witness testimony; (3) Whether the ALJ |
| 16 | provided specific and legitimate reasons for rejecting the opinion of plaintiff's treating physician; |
| 17 | and (4) Whether reversal for a finding of disability is the proper remedy. *See* Dkt. 14, p. 1. |
| 18 | |
| 19 | STANDARD OF REVIEW |
| 20 | Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of |
| 21 | social security benefits if the ALJ's findings are based on legal error or not supported by |
| 22 | substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th |
| 23 | Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). |
| 24 | |

## DISCUSSION

**I.      Whether the ALJ provided clear and convincing reasons for rejecting the testimony of plaintiff.**

Plaintiff alleges that the ALJ failed to provide clear and convincing reasons for rejecting plaintiff's testimony regarding his symptoms and functional limitations. If an ALJ rejects the testimony of a claimant once an underlying impairment has been established, the ALJ must support the rejection "by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (*citing Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir.1993)). The Ninth Circuit reaffirmed this standard stating "the only time this standard does not apply is when there is affirmative evidence that the claimant is malingering. *Carmickle v. Comm'r, SSA*, 533 F.3d 1155, 1160 (9th Cir. 2008); *see also Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014) ("There is no conflict in the caselaw, and we reject the government's argument that *Bunnell* excised the "clear and convincing" requirement"); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (*citing Bunnell v. Sullivan*, 947 F.2d 341, 343, 346-47). As with all of the findings by the ALJ, the specific, clear and convincing reasons also must be supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). Here, the ALJ rejected plaintiff's testimony because plaintiff's statements are not entirely consistent with evidence in the record. AR. 1490.

In regards to his hip impairment, the ALJ states the record shows that after his second hip replacement surgery, plaintiff "denied or made no mention of musculoskeletal pain, and presented in no acute distress with no obvious musculoskeletal abnormalities." AR. 1491. The ALJ states that this evidence is "inconsistent with the claimant allegations of being largely

incapacitated by his symptoms, and having to lie down all day, the objective record does not show evidence of muscle atrophy." *Id.* This reason is not based on substantial evidence because plaintiff did not testify to "pain requiring him to lie down all day every day." AR. 1490. Plaintiff testified, and the ALJ acknowledged, that he has good days and bad days, and that on his good days he can move around, cook, and do laundry, but on bad days he spends most of the day lying down. AR. 60-61, 1489. Plaintiff testified that he has about fifty percent bad days and good days. AR. 60. Therefore, the ALJ's assumption that plaintiff's muscles would have shown signs of atrophy is not based on substantial evidence. AR. 1491. Moreover, once a medically determinable impairment has been established, "the claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof." *Carmickle, supra*, 533 F.3d at 1160 (*quoting Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir. 1996).

      The ALJ also discounted plaintiff's credibility in regards to his cardiopulmonary impairment stating medication was generally effective in managing the claimant's symptoms, and that many instances of exacerbation in his condition were due to poor medication compliance. AR. 1492-94. The ALJ cites to SSR 16-3p which states that the ALJ may find that the intensity and persistence of an individual's symptoms are inconsistent with the overall record if the individual fails to follow prescribed treatment that might improve symptoms. AR. 1494, n. 3. However, SSR 16-3p also states that "we will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment…" SSR 16-3p, 2016 LEXIS 4 at *23. Furthermore, federal regulations state that the Administration will consider whether there is an acceptable reason why the individual did not follow prescribed treatment. 20 C.F.R. §404.1530.

Here, the ALJ discusses the requirement to investigate the reason for the failure to follow treatment. He states that the evidence does not indicate a cognitive problem and that the plaintiff did not have significant problems regarding insurance coverage. AR. 1494. The ALJ also acknowledges that the majority of the record indicates that plaintiff took his medication consistently. AR. 1494. The ALJ's determination that plaintiff did not comply with prescribed treatment is not based on substantial evidence.

By the ALJ's own admission, plaintiff had difficulty complying with treatment due to problems with insurance. The ALJ noted that in 2012, plaintiff's second hip replacement surgery was delayed for seven months due to insurance problems. AR 1491. While plaintiff was awaiting this surgery, he had significant difficulty walking and was instructed to use a walker. AR. 699. The ALJ also notes that in late 2015, plaintiff required a lumbar injection for degenerative disc disease which was delayed due to insurance. AR. 1491. The record also indicates that, at times, plaintiff had difficulty affording his medications. AR. 293, 1245, 1535, 2531. Therefore, this reason for rejecting plaintiff's testimony is not based on substantial evidence.

The ALJ further states that "poor treatment compliance was involved in *many* of the instances were [sic] the claimant's symptoms were not adequately controlled." AR. 1494 (emphasis added). This reason is not clear and convincing because it appears from the record that there were many exacerbations that were not due to medication noncompliance. The ALJ noted that plaintiff had "about six exacerbations in his heart and respiratory symptoms in 2015 and 2016," but that the most significant exacerbation was precipitated by taking his medication improperly. AR. 1493. By this measure, plaintiff is having regular exacerbations on his medication, and the exacerbation is worse if he does not comply. In addition to the exacerbations the ALJ noted in his decision, plaintiff's brief makes note of five hospitalizations

and four emergency room visits for the cardiopulmonary impairment between April 2011 and August 2012. Dkt 14, p.6; *see* AR. 291-99, 300-25, 356, 366, 787, 803-07, 892, 1407, 2353, 2117-2410. A few incidents of forgetting to take medication, or accidentally taking it improperly over the course of five years is not substantial evidence of treatment non-compliance when the longitudinal record shows that plaintiff was symptomatic and experiencing exacerbations even when he was compliant. The ALJ concedes that plaintiff was compliant the majority of the time. AR. 1494.

The ALJ also rejected plaintiff's testimony because the ALJ found it was not entirely consistent with plaintiff's daily activities. AR. 1494. The ALJ cites activities such as driving a car, paying bills and managing finances, watching television, going to church, going to a coffee shop, light household chores, preparing simple meals, and caring for his six and twelve year old children. AR. 1494-95. Regarding activities of daily living, the Ninth Circuit repeatedly has "asserted that the mere fact that a plaintiff has carried on certain daily activities . . . . does not in any way detract from [his] credibility as to [his] overall disability." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (*quoting Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)). The Ninth Circuit specified "the two grounds for using daily activities to form the basis of an adverse credibility determination: (1) whether or not they contradict the claimant's other testimony and (2) whether or not the activities of daily living meet "the threshold for transferable work skills." *Orn, supra*, 495 F.3d at 639 (*citing Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

Here, the ALJ stated that the daily activities were inconsistent with plaintiff's testimony that "he has to lie down all day everyday; he cannot do any household tasks; and he depends on his wife and adult child to do most of the cooking." AR. 1495. As discussed above, plaintiff testified that on his good days he was able to move around, cook and do laundry but on bad days

he spends most of the day lying down. AR. 60-61, 1489. Therefore, plaintiff's daily activities are not inconsistent with his testimony that he has good days and bad days.

Furthermore, the ALJ did not assess whether these activities met the threshold for transferable work skills. As stated by the Ninth Circuit, the ALJ "must make 'specific findings relating to the daily activities' and their transferability to conclude that a claimant's daily activities warrant an adverse determination regarding if a claimant's statements should be credited." *Orn, supra*, 495 F.3d at 639 (*quoting Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005)). Therefore, the ALJ did not provide substantial evidence to show that plaintiff's daily activities were inconsistent with his testimony.

Finally, the ALJ determined that plaintiff's "affirmative participation in the State's unemployment program is inconsistent with the severity of the claimant's subjective report of limitations." AR. 1495. The Ninth Circuit has held that when a plaintiff receives unemployment benefits, it is only inconsistent with his disability allegations if there is evidence that the plaintiff is holding himself out as available for full-time or part-time work. *Carmickle v. Comm'r, SSA*, 533 F.3d 1155, 1162, 2008 U.S. App. LEXIS 15720, *14, 134 Soc. Sec. Rep. Service 27.

Citing to the Washington State Employment Security Department, the ALJ notes that a requirement of the program is a weekly certification that the recipient certify that he is physically able and available for work each day. AR. 1496. At his hearing, plaintiff testified that while receiving unemployment benefits, he applied only for jobs that would accommodate his health concerns, and that he would have taken a job if one was offered. AR. 49-50, 1496. Plaintiff received unemployment benefits from September 2011 to February 2013, but ultimately never found a job. AR. 1777. Therefore, there is no substantial evidence that he was actually capable of

working during that time. The ALJ's determination that plaintiff was holding himself out as available for work is not based on substantial evidence.

Plaintiff states that he has "somewhat limited English skills," had no resume, was not proficient with a computer, and was not familiar with the unemployment program. AR. 1770; Dkt. 14, p. 12. Plaintiff further states that because plaintiff had held the same job for fourteen years, that plaintiff was not familiar with job searching. *Id.* Plaintiff testified that he would accept a job *that would fit with his medical impairments*. AR. 49-50, 1496 (emphasis added). Plaintiff stated that he could do "light duty" but there is no evidence that plaintiff knew what that meant. AR. 1707.

Moreover, plaintiff's desire to work if there were a job available that would accommodate his impairments and his actual ability to work are not necessarily incompatible. During the time that plaintiff was in receipt of unemployment benefits, he was also hospitalized multiple times and was unable to walk without a walker for seven months as he awaited hip surgery. AR. 686-703. Plaintiff's treating physician's opinion that stated plaintiff can only sit for two hours in an eight-hour workday, stand/walk for less than two hours in an eight-hour workday, and would miss three days of work per month because plaintiff was holding himself out as available for work. AR. 1497. When considering the record as a whole, substantial evidence does not support this reason for rejecting plaintiff's testimony.

For the reasons set forth above, the Court finds that the ALJ erred in rejecting plaintiff's testimony regarding the severity and limiting effects of his impairments.

**II.  Whether the ALJ provided germane reasons for rejecting the lay witness testimony.**

The ALJ rejected the lay witness testimony of plaintiff's wife and children because "[t]he statements generally reflect the same allegations made by the claimant, allegations that are not

entirely consistent with the overall record …" AR. 1500. An ALJ may disregard opinion evidence provided by both types of "other sources," characterized by the Ninth Circuit as lay testimony, "if the ALJ 'gives reasons germane to each witness for doing so.'" *Turner v. Comm'r, Soc. Sec. Admin.*, 613 F.3d 1217, 1224 (9th Cir. 2010) (*quoting Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)); *see also Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). An ALJ may discredit lay testimony if it conflicts with medical evidence, even though it cannot be rejected as unsupported by the medical evidence. *See Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (An ALJ may discount lay testimony that "conflicts with medical evidence") (*citing Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984).

The ALJ rejected lay witness testimony from plaintiff's family for same reasons he rejected plaintiff's testimony. AR. 1500. However, the ALJ gives conclusory reasons for not accepting their testimony. *Id.* Rather than addressing lay testimony, the ALJ reiterates the reasons he found plaintiff's own testimony to be not credible -- reasons this Court finds are not based on substantial evidence. Therefore, the ALJ erred in rejecting lay witness testimony.

**III.     Whether the ALJ provided specific and legitimate reasons for rejecting the opinion of plaintiff's treating physician.**

The ALJ afforded partial weight to the December 2012 opinion of plaintiff's treating physician, Dr. Volk, finding some aspects of his opinion of plaintiff's functioning consistent with the treatment records and the claimant's reports. AR. 1496-98. Due to his numerous conditions, plaintiff has also received care from many other physicians, including orthopedic and cardiac specialists. The ALJ considered all opinions provided by acceptable medical sources and gave a detailed explanation as to which portions of each opinion he found credible. *See* AR. 1496-1500.

The Ninth Circuit has held that "[a] treating physician's medical opinion as to the nature and severity of an individual's impairment must be given controlling weight if that opinion is

well-supported and not inconsistent with the other substantial evidence in the case record."
*Edlund v. Massanari*, 2001 Cal. Daily Op. Srvc. 6849, 2001 U.S. App. LEXIS 17960 at *14 (9th Cir. 2001) (*citing* SSR 96-2p, 1996 SSR LEXIS 9); *see also Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). When a treating or examining physician's opinion is contradicted, that opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996) (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

Here, the ALJ partially accepted Dr. Volk's opinion that plaintiff can sit for more than two hours at a time, stand for thirty to sixty minutes, can occasionally lift twenty pounds, and frequently lift ten pounds, can stand/walk for less than two hours in an eight hour workday, would miss more than three days of work per month, would have constant attention and concentration problems because of pain, and that plaintiff's hip condition continued to improve after surgery with a good prognosis. AR. 1497; *see also* AR. 1318-21.

The ALJ rejected the portion of Dr. Volk's opinion that stated plaintiff can only sit for two hours in an eight-hour workday, stand/walk for less than two hours in an eight-hour workday, and would miss three days of work per month. AR. 1497. The ALJ supported this decision with evidence that plaintiff did not report hip pain from the time after his surgery in September 2012 until March 2014. *Id.* However, this is not a specific and legitimate reason because Dr. Volk submitted his opinion in December 2012, and could not have known at that time that plaintiff would not seek treatment for his hip for more than a year after he wrote his opinion. AR. 1496-98.

The ALJ also noted that during the time period reflected in Dr. Volk's medical opinion, plaintiff was holding himself out as available for work, which is contradictory to plaintiff's simultaneous claim that he is disabled. *Id.* As discussed in section one above, this is not a specific and legitimate reason for rejecting this portion of Dr. Volk's opinion.

Finally, the ALJ stated that Dr. Volk's contemporaneous treatment note that stated plaintiff would benefit from getting a job was inconsistent with his opinion that stated plaintiff would be absent from work three days per month and could only sit for two hours at a time. AR. 1498. This reason is not inconsistent because the doctor did not state whether plaintiff should work full time or part time, nor what exertional level of work plaintiff could do.

In sum, the Court finds that the ALJ did not provide specific and legitimate reasons to reject portions of Dr. Volk's opinion.

**IV.     Remedy.**

Plaintiff requests that this Court reverse fully the ALJ's decision and award payment of benefits. Dkt. 14, pp.17-18. Generally, when the Social Security Administration does not determine a claimant's application properly, "'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). The Ninth Circuit has put forth a "test for determining when [improperly rejected] evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (*quoting Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). It is appropriate when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that

> the ALJ would be required to find the claimant disabled were such evidence credited.

*Harman, supra,* 211 F.3d at 1178 (*quoting Smolen*, *supra*, 80 F.3d at 1292). As discussed above, this Court found that the ALJ failed to provide legally sufficient reasons for rejecting plaintiff's testimony, lay witness testimony, and the treating physician's opinion. Neither party has alleged that the record is incomplete or that further development is necessary. At the third step, the Court must determine whether the improperly rejected plaintiff testimony, lay testimony, and treating physician opinion, if credited as true, would require the ALJ to find plaintiff disabled.

In regards to the time period prior to plaintiff's first hearing, the Court finds that when crediting the treating physician's opinion as true, the plaintiff would be disabled. If the treating physician opinion had not been improperly rejected, it should have been given controlling weight. *Edlund v. Massanari*, 2001 Cal. Daily Op. Srvc. 6849, 2001 U.S. App. LEXIS 17960 at *14 (9th Cir. 2001) (*citing* SSR 96-2p, 1996 SSR LEXIS 9); *see also Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *see also Garrison v. Colvin,* 759 F.3d 995, 1020, (9th Cir. 2014) ("in *Hammock v. Bowen*, we held that the credit-as-true rule applies to medical opinion evidence, not only claimant testimony") (citations omitted). The treating physician opined, among other things, that plaintiff would miss three days of work per month. AR. 1318-21. Moreover, plaintiff had five hospitalizations and four emergency room visits for his cardiopulmonary impairment between April 2011 and August 2012. AR. 291-99, 300-25, 356, 366, 787, 803-07, 892, 1407, 2353, 2117-2410. He was hospitalized for hip replacement surgery in September 2012. AR 1332-1357. The vocational expert opined that if plaintiff were to miss two or more days per month, there would be no jobs available in the national economy. AR. 1547. Therefore, crediting Dr. Volk's opinion as true and adding the limitation of three absences per month to the RFC directs a finding of disability. *See Harman, supra,* 211 F.3d at 1178 (*quoting Smolen*, *supra*, 80 F.3d at

1292). However, Dr. Volk submitted his medical opinion in December 2012 and, therefore, is only relevant to the time period before the March 2013 hearing. AR. 1318-21.

This Court previously remanded this ALJ's decision because the ALJ failed to identify specific evidence that conflicted with Dr. Volk's opinion, and for further consideration of plaintiff's credibility in light of the reconsidered medical opinion. *See* AR. 1595, 1599. In his second decision, the ALJ made specific findings, but for the reasons stated above, this Court has determined that they are not legitimate. The Ninth Circuit has noted that providing an ALJ with another opportunity to reject evidence is not always proper, and concluded as follows:

> Although the Commissioner argues that further proceedings would serve the "useful purpose" of allowing the ALJ to revisit the medical opinions and testimony that she rejected for legally insufficient reasons, our precedent and the objectives of the credit-as-true rule forecloses the argument that a remand for the purpose of allowing the ALJ to have a mulligan qualifies as a remand for a "useful purpose" under the [second] part of the credit-as-true analysis. (Citations to *Benecke*, 379 F.3d at 595 ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication."); *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004) ("The Commissioner, having lost this appeal, should not have another opportunity to show that Moisa is not credible any more than Moisa, had he lost, should have an opportunity for remand and further proceedings to establish his credibility." (citation omitted))).

*Garrison v. Colvin*, 759 F.3d 995, 1021-22 (9th Cir. 2014) (*citing Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1202 (9th Cir. 2008). Here, the ALJ has already had two opportunities to give specific and legitimate reasons for rejecting the portion of Dr. Volk's testimony that is favorable to the claimant. To give a third opportunity would create the "heads we win; tails, let's play again" situation the Ninth Circuit has warned against. *Garrison, supra*, 759 F.3d at 1021-22 (citations omitted). Thus, the Court orders that Dr. Volk's testimony be credited as true and benefits be paid for the period from plaintiff's disability onset date through plaintiff's first hearing.

1    The ALJ also rejected plaintiff's and the lay witnesses' testimonies. In 2013, this Court
2    found that the ALJ had not improperly rejected plaintiff's testimony, but that further
3    consideration may be necessary after reconsidering Dr. Volk's opinion. AR. 1599. Since that
4    time, a new hearing was held and over two thousand pages of new medical evidence was added
5    to the record. Therefore, after reviewing the record as a whole, this Court has made a new
6    determination that the ALJ improperly rejected plaintiff's and lay witnesses' testimonies.

7    The Ninth Circuit has stated that "an ALJ's failure to provide sufficiently specific reasons
8    for rejecting the testimony of a claimant or other witness does not, without more, require the
9    reviewing court to credit the claimant's testimony as true." *Treichler v. Comm'r of Soc. Sec.*
10   *Admin.,* 775 F.3d 1090, 1106 (9th Cir. 2014) (citations omitted). While the ALJ failed to provide
11   legally sufficient reasons for rejecting plaintiff's testimony, it remains uncertain whether a
12   finding of disability would be required if such evidence were credited. *Harman, supra,* 211 F.3d
13   at 1178 (*quoting Smolen*, *supra*, 80 F.3d at 1292).

14   Plaintiff testified at his second hearing that he could only walk about ten minutes before
15   experiencing shortness of breath, that he could only sit for twenty minutes before needing to
16   stretch his back, that he required the use of both hands to rise from seated a position, that when
17   he stood up he had to rise slowly, and that his regimen of fourteen medications was confusing.
18   AR. 1529-33. The Court is uncertain how these limitations would affect plaintiff's RFC.
19   Likewise, it is uncertain how the lay witnesses' testimonies would translate into functional
20   limitations in the RFC. *See* AR. 2006-2009. Therefore, "it is not clear from the record that the
21   ALJ would be required to find plaintiff disabled were the inappropriately discredited evidence
22   credited in full." *See Harman, supra,* 211 F.3d at 1178 (*quoting Smolen*, *supra*, 80 F.3d at 1292).

In sum, the Court finds that the "credit as true" test has been satisfied as to the time period prior to the first hearing and a payment of benefits is appropriate. In regards to the time period after the first hearing, it is not clear whether the ALJ would be required to find plaintiff disabled if the improperly rejected testimony were credited as true. Therefore, remand for a determination of plaintiff's RFC is the appropriate remedy.

## CONCLUSION

Based on these reasons and the relevant record, the Court **ORDERS** that this matter be **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g), and that payment of benefits for the period before the first hearing be awarded.

**JUDGMENT** should be for **PLAINTIFF** and the case should be closed.

Dated this 12th day of September, 2018.

J. Richard Creatura
United States Magistrate Judge